IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 25-mj-00022-TPO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ADAN DESIDERIO PAVON-ANDINO,

    Defendant.

---

# MEMORANDUM OPINION AND ORDER

---

    On February 7, 2025, this Court presided over a hearing to determine whether the government was entitled to a Detention Hearing under 18 U.S.C. §3142(f)(2). Based on the minimal amount of information provided by the government during the hearing, and the substantial amount of information in support of release, this Court found that the government did not meet its burden in demonstrating that the defendant posed "a serious risk of flight" as required under the Bail Reform Act, and ordered the defendant released. Because the legal authority surrounding this analysis is not abundantly clear, this Court offers the below authority and reasoning to support its decision to release the defendant. This Memorandum Opinion and Order is meant to supplement, no supplant, the factual findings and rulings made at the February 7 hearing.

**I.**    **The Relevant Factors Favor Release over Detention.**

    First, as always, the Court is guided in its analysis by the Bail Reform Act (18 U.S.C.

§3142 *et seq*.) and the relevant case law surrounding pretrial release. The Court is mindful of the foundational United States Supreme Court case of *United States v. Salerno* that states: "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." 481 U.S. 739, 755 (1987).

Second, as a threshold matter, the Bail Reform Act requires the Court to make an initial determination of the type of offense before considering detention. There are certain offenses that are automatically, based on the charge itself, eligible for detention. 18 U.S.C. §3142(f)(1). There are other offenses that *could* require a detention hearing, depending on additional circumstances. 18 U.S.C. §3142(f)(2). If the offense falls within the latter category of offenses, then to even consider detention, the government must demonstrate that the case involves "a serious risk that such person will flee; or a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injury, or intimidate, a prospective witness or juror." 18 U.S.C. §3142(f)(2). This case focuses on the first of those two prongs – the serious risk that the defendant will flee – as the government did not argue that the second prong applied nor is there any evidence to support its application.

In the present case, the parties agreed that the only federal offense charged is one under 8 U.S.C. §1326, illegal re-entry following a prior removal. The parties also agreed that the case must involve a serious risk of flight for a Detention Hearing to be conducted. By the plain language of the statute, this Court cannot conduct a Detention Hearing (or, by extension, grant the government's request for a continuance to conduct a Detention Hearing) unless there is sufficient evidence[1] that the defendant poses a serious risk of flight.

---

[1] The government's burden of proof at this stage is not explicitly stated in the Bail Reform Act,

Third, this Court found, and the government did not dispute, that the defendant's charge itself, combined with his pending deportation hold, does not equate to a serious risk of flight. In *United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017), the Tenth Circuit made that point clear when it found that "a risk of involuntary removal does not establish a 'serious risk that [defendant] will flee' upon which pre-trial detention may be based." *Id.* at 1337. As explained below, in the present case, the charge and accompanying deportation hold are not indicative of a risk of flight at all.

Fourth, some of the non-exclusive primary factors for the Court to consider as it relates to a defendant's risk of flight in an immigration related case are:

1) Prior violation of the terms of his supervised release,

2) Multiple unlawful entries into the United States,

3) Prior failure to appear when required in state court,

---

other than it must prove that the case "involves a serious risk that [defendant] will flee." 18 U.S.C. §3142(f)(2)(A). The government argued that it must be something lower than preponderance (which is the burden at the actual Detention Hearing), but provided the Court with no authority in support of that idea. In doing so, the government conflated two related, but different, standards regarding flight: the risk of *flight* at this stage, a more narrow standard, than the risk of *non-appearance* that is decided as part of a Detention Hearing. *U.S. v. Figueroa-Alvarez*, 681 F.Supp.3d 1131, 1137 (D. Idaho 2023). Several courts have found a preponderance of the evidence to be the appropriate burden at this stage. *See United States v. Cisneros,* 328 F.3d 610, 612 (10th Cir. 2003) (referencing the burden of proof as a preponderance of the evidence); *see also Figueroa-Alvarez*, 681 F.Supp.3d at 1138 ("the Government must demonstrate that it is more likely than not that there is a serious *risk* that the defendant will flee, not that it is more likely than not that the defendant *will* flee.") (emphasis in original) (citing *United States v. Duarte-Vela*, No. 23-cr-00009-TOR-1, Amended Order Following Status Hearing Regarding Detention and Detention Hearing at 7 (Dkt. 32) (E.D. Wa. Jan 25, 2023) and *United States v. Alvarenga-Canan*, No. 23-cr-00042-BLW, Motion Hearing (March 2, 2023) Tr. at 7 (Dkt. 26) ("It's got to be 51 percent of a serious risk.")); *see also*, *United States v. Villatoro-Ventura*, 330 F.Supp.3d 1118, 1135 (N.D. Iowa 2018). As a result, this Court finds the burden to be a preponderance of the evidence that the defendant poses a serious risk of flight.

4) Use and possession of fraudulent identity documents, and

5) The severity of the potential punishment and the weight of the evidence against him.

*Figueroa-Alvarez*, 681 F.Supp.3d at 1139 (citing *United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015)). Regarding the serious risk of flight specifically concerning a defendant who is not a lawful resident of the United States, additional factors can be considered:

a) Incentives to flee,

b) Ability to flee,

c) Ties to the jurisdiction and the United States, and

d) Reliability and trustworthiness of the defendant.

*Id.* at 1140 (citing Lauryn P. Gouldin, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 703-04 (2018)).

Using these factors as a guide, it is clear that the Court's decision to release is correct.

1) Violation of the terms of supervised release – this factor weighs in favor of the defendant's release. On May 16, 2024, the defendant was released from custody in Arapahoe County after his family posted a $100,000 cash/surety bond on his behalf. Since then, the evidence supports that defendant has been compliant on conditions and has appeared in court multiple times as required. On the other side of the scale, the defendant was released from custody twice before and did not appear. Those failures to appear were in 2013 and 2015, 12 and 10 years ago respectively, and weigh less than the defendant's recent, positive performance.

2) Multiple unlawful entries – the Complaint suggests that this 31-year-old defendant has entered the country at least three times without permission. On one occasion, after entering and while on an immigration release, he voluntarily returned to Honduras. ECF 1-2 at p. 2. On another occasion, he was removed by an immigration judge. *Id.* at p. 3. The present case is the first charge under 8 U.S.C. §1326 that the government has brought against him. In this Court's experience, this is not an aggravated immigration history.[2] Nonetheless, this factor weighs slightly in favor of detention.

3) Prior failures to appear in state court – there is evidence on both sides of the scales as it relates to this factor, but the heavier weight is in support of release. The defendant has one failure to appear in connection with two Arapahoe County cases in 2015. Since then, he has three minor traffic offenses with no failures to appear, and following his most recent arrest, he has been out of custody on conditions of release for nine months after his family posted bond. Since then, he has appeared in court as instructed multiple times and there is no record of pretrial release violations. The totality of circumstances relating to this factor, especially his most recent compliance with traffic related matters and his compliance on release for 8-9 months, support his release.

4) The use and possession of fraudulent identification documents – the government presented no information about the defendant's use of fraudulent identification

---

[2] According to data from the United States Sentencing Commission from 2015, the average number of deportations for reentry offenders was 3.2. *See* "Illegal Reentry Offenses," United States Sentencing Commission (April 2015) (found at Illegal Reentry Offenses | United States Sentencing Commission) (www.ussc.gov/research/research-publications/illegal-reentry-offenses).

documents nor is any information contained in the Complaint about it [ECF 1-2]. The government did indicate that the defendant has used two alias names: Adan Desiderio Pavor-Andino and Ricardo Desiderio Lozano-Valle. ECF 1. The first alleged alias name is as consistent with a typographical error as an attempt to deceive. As to the second alleged alias name, when the Court asked for more information about the circumstances surrounding its use, the government was unable to provide additional, contextual information.[3] As a result, this factor is neutral.

5) The severity of the potential punishment and the weight of the evidence against him – the weight of the evidence appears to be strong. He was found inside of the United States and "according to checks of various immigration and criminal databases, PAVON has not applied for, nor does he have any permissions to enter or remain in the United States." ECF 1-2 at p. 3. However, the potential punishment he faces is minimal and is consistent with the punishment associated with a misdemeanor offense. As estimated by the Court during the February 7 hearing, without objection by the government, the likely guideline range for the defendant's re-entry offense is between 8-12 months of imprisonment, even lower if the defendant participates in the Fast Track program that is typically offered to defendants in his position. This factor weighs heavily in favor of release.

A) Incentives to flee – there is nothing specific to justify the defendant's incentive to flee in the present case. His ties to the community, including family members and

---

[3] The pretrial services report also notes an arrest for "criminal impersonation," but since the defendant was not convicted of that offense, nor did the Court receive any additional information about it from the government, it is not given any weight.

employment, as well as the significant bond posted by his family in the pending Arapahoe County matter, demonstrate multiple incentives to stay. The pretrial services report notes no substance abuse, mental health, or physical health issues that may increase the risk of flight. Any idea that immigrant defendants are more likely to flee than non-immigrant defendants is simply not supported by any concrete data. *Figueroa-Alvarez*, 681 F.Supp.3d at 1140. In fact, empirical evidence suggests exactly the opposite: according to a March 2022 United States Department of Justice Special Report, "alien defendants granted pretrial release were *less* likely to fail to appear or violate conditions of release than non-alien defendants. *Id.* (emphasis in original) (citing a **0.5% failure to appear rate** from "Pretrial Release and Misconduct in Federal District Courts, Fiscal Years 2011-18," U.S. Dept. of Justice – Office of Justice Programs (March 2022) (found at [Pretrial Release and Misconduct in Federal District Courts, Fiscal Years 2011–2018 | Bureau of Justice Statistics](https://bjs.ojp.gov/library/publications/pretrial-release-and-misconduct-federal-district-courts-fiscal-years-2011-2018)) (bjs.ojp.gov/library/publications/pretrial-release-and-misconduct-federal-district-courts-fiscal-years-2011-2018). Considering that the overall failure to appear rate nationwide hovers between 1.1%-1.6%, this is significant. *See* Alison Siegler, "Freedom Denied," Univ. of Chicago Law School (October 2022) (found at [Freedom Denied](https://freedomdenied.law.uchicago.edu)) (freedomdenied.law.uchicago.edu). This factor weighs in favor of release.

B) Ability to flee – the government has provided the Court with no evidence that the defendant has access to a large amount of money to travel, fraudulent travel documents, or specific ties to individuals outside of the country that could facilitate international travel. Other than his general ties to Honduras and the family members

7

    that live there, there is no evidence to support the defendant's specific ability to flee. His return to the United States, even after a prior deportation, would support the defendant's desire to stay in the county, not to flee. As a result, this factor is neutral.

C) Ties to the jurisdiction – the Court finds this factor to be neutral or weigh slightly in favor of detention. Clearly, the defendant has family ties outside of the United States in his native country of Honduras. However, for the last three years, and some unknown amount of time before that, the defendant has resided in the District of Colorado. His release in May of 2024 following his family's posting of a secured bond, and his subsequent compliance with conditions, demonstrates a significant tie to the community that minimizes the risk of flight. While he has some family here, the majority of his family remains in Honduras.

D) Reliability of the defendant – since the Court only received minimal information about the defendant from both parties, it is difficult for this Court to make a determination regarding this factor. However in broad strokes, the Court can see that as an adolescent defendant, in 2013 and 2015, the defendant made two missteps relating to attending court appearances. On one of those occasions, the government's own evidence demonstrates that the defendant voluntarily left the country to return to Honduras. ECF 1-2 at p. 2. The most influential factor relating to this factor is the defendant's most recent performance on pretrial release. This Court finds that it speaks volumes about his willingness to appear in court. As a result, this court finds this factor weighs slightly in favor of release.

When considering the totality of all these circumstances, the large majority of the factors favor

release and only a couple of factors weigh slightly in favor of detention. As a result, the government failed to meet its burden in demonstrating that the defendant poses a serious risk of flight at this stage in the proceedings by a preponderance of the evidence. As a result, the Court believes that a release on conditions[4] is appropriate.

## II.     Denial of Motion to Stay the Court's Release Order

Following the Court's ruling on the issue of detention, the government requested that the Court stay its Order of Release. The government's request was without a legal basis, citing only to the general legal principle that the government may appeal this Court's decision to the district court under 18 U.S.C. §3145. The Court agrees that the government may appeal this Court's release order to the district court, and nothing about the Court's findings on February 7 or in this Memorandum Opinion and Order is meant to impede the government's ability to appeal.

However, as stated on the record, the mere request for a stay does not require the issuance of one. The Court referred to the factors described in *Nken v. Holder*, 556 U.S. 418, 434 (2009), to deny the government's request, which are: 1) strong showing of success on the merits of the appeal, 2) irreparable harm to the moving party, 3) substantial injury to other interested parties, and 4) the public interest.  First, the government did not demonstrate a likelihood of success on the merits of its appeal of this Court's release order. The government failed to indicate any additional information that the Court did not factor into its decision or any information that it could obtain to add detail to its argument. The government also failed to identify any "other

---

[4] Once this Court made the determination on the issue of detention, the Court set the conditions of release. The Court proposed a set of conditions, including GPS monitoring and a curfew, that was more strenuous than those conditions proposed by the parties. Neither party objected to the proposed conditions of release.

parties" or public interest that would be served by granting the stay.

The government only provided argument on one *Nken* element, the irrevocable injury prong, arguing that once the defendant is released, it would not be able to bring him back into custody. That is simply not the case. *See, e.g.*, *United States v. Robertson*, 852 F. App'x 331, 335 (10th Cir. 2021) (district court granted pretrial release and then when the Tenth Circuit granted the stay motion, the defendant was returned to custody). Furthermore, in the present case, the undisputed evidence is that there is an immigration detainer pending for the defendant, and the Court's Order of Release would not result in the defendant's actual release of the defendant, only his transfer into immigration custody.[5] The government also could not provide a likely timeline for the deportation process to justify the possibility that the defendant would be deported prior to the district court hearing the appeal as a basis for irrevocable harm. In this Court's experience, the possibility of a removal hearing being held within a week of the February 7 hearing would be unlikely. Thus, this Court does not find that the government has shown an irrevocable injury to support a stay.

With none of the *Nken* factors favoring a stay, the government's request for a stay was correctly denied. As this Court mentioned at the hearing, though, the government's request to stay is denied without prejudice. Clearly, the most proper venue to hear the government's motion to stay this Court's Order of Release would be with the yet-to-be assigned district judge. The Court encourages the government to pursue such motion for stay with the district court should it see fit.

---

[5] This fact was confirmed by the United States Marshal in the courtroom during the February 7 hearing.

ACCORDINGLY, for the reasons this Court gave at the Detention Hearing, as supplemented herein, this Court **DENIES** the government's motion to set the matter for a Detention Hearing; **GRANTS** the defendant's request for pre-trial release subject to the conditions imposed; and **DENIES** the government's oral motion to stay the Court's Order of Release without prejudice to appeal.

This Court directs the Clerk of the Court to assign a district judge to the present matter to allow the government to request a stay and appeal this Court's Release Order.

IT IS SO ORDERED.

DATED at Denver, Colorado, this 10th day of February, 2025.

BY THE COURT:

Timothy P. O'Hara
United States Magistrate Judge